# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| **JASON PUTMAN,**<br><br>             **Plaintiff,**<br><br>    **vs.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of Social**<br>**Security,**<br><br>             **Defendant.** | **CV 12-07-BLG-CSO**<br><br>**ORDER ADDRESSING**<br>**SUMMARY JUDGMENT**<br>**MOTIONS** |

Plaintiff Jason Putman ("Putman") seeks judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. *Complt. (DKT 1).* Upon the parties' consent, this case was assigned to the undersigned for all proceedings. *DKT 10.*

Now pending are the parties' cross-motions for summary judgment. *DKTs 11* (Putman's motion) and *17* (Commissioner's motion). For the reasons stated below, the Court denies Putman's

motion, grants the Commissioner's motion, and affirms the Commissioner's decision denying DIB.

## I. **PROCEDURAL BACKGROUND**

On June 19, 2009, Putman filed his DIB application.  *Tr. 168-74*. He alleged that he had been unable to work since October 24, 2008, because of bipolar disorder, borderline personality disorder, Attention Deficit Disorder, HIV, and back pain.  *Tr. 175, 223*.  The Social Security Administration ("SSA") denied Putman's claim both initially and on reconsideration.  *Tr. 128-30*.

On September 1, 2010, an Administrative Law Judge ("ALJ") held a hearing.  *Tr. 47*.  On October 18, 2010, the ALJ issued a written decision denying Putman's claim.  *Tr. 14-21*.  On November 21, 2011, after the Appeals Council denied Putman's request for review, the ALJ's decision became final for purposes of judicial review.  *Tr. 1-5*; 20 C.F.R. § 404.981 (2012).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. **STANDARD OF REVIEW**

This Court's review is limited.  The Court may set aside the

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id*. (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9ᵗʰ Cir. 2002) (internal citation omitted).

## III.  <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9ᵗʰ Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9ᵗʰ Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.     If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3.     The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.     If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.     If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-

Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.  THE ALJ's OPINION

The ALJ followed the five-step sequential evaluation process in considering Putman's claims. First, the ALJ found that Putman had not engaged in substantial gainful activity since his amended alleged onset date of October 24, 2008. *Tr. 16.*

Second, the ALJ found that Putman "has the following severe impairments: bipolar disorder, borderline personality disorder and obesity[.]" *Tr. 16.* He also found that Putman's alleged back pain is not a "severe" impairment under the Act because it does not significantly limit Putman's ability to perform basic work activities. *Id.*

Third, the ALJ found that Putman's mental impairments, considered singly and in combination, neither meet nor medically equal any of the impairments in the Listing of Impairments. *Tr. 17.* The ALJ also found that Putman's obesity "is not attended with the specific clinical signs and diagnostic findings required to meet or equal the

requirements set forth in the listings found in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity." *Tr. 18*.

Fourth, the ALJ found that Putman has the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: [Putman] has "mild" limitations (defined as slight limitations, but the individual can generally function well) in activities of daily living; he is limited to brief, superficial contact with the public; he is limited to positions that require little interaction with coworkers; he is limited to positions that, once the job is learned, require minimal supervision and interaction with supervisors; he is limited to positions that do not require high levels of constant focus for an eight hour period, and do not expose [him] to high levels of constant stress for an eight hour period. [Putman] is limited to unskilled work.

*Tr. 18*.

The ALJ found that Putman is capable of performing his past relevant work as a parking lot flagger and janitor, because these jobs do not require the performance of work-related activities precluded by the RFC. *Tr. 21*. The ALJ concluded that Putman has not been under a disability, as defined under the Act, from October 24, 2008, through the date of the ALJ's decision of October 18, 2010. *Id.*

## V.   PARTIES' ARGUMENTS

Putman first argues the ALJ erred by failing to find that his back pain constitutes a severe impairment.  Putman argues that his subjective complaints of lower back pain are consistent with the objective medical findings of his treating physicians.  Thus, he argues, the ALJ's finding that his back pain is not severe is not supported by substantial evidence.  *Putman's Br. (DKT 12) at 7.*

Second, Putman argues the ALJ erred by failing to find that his diagnosed mental disorders meet an impairment in the Listing of Impairments.  Specifically, Putman argues the ALJ failed to afford proper weight to the opinions of Debbie Webber-Dereszynski ("Webber-Dereszynski"), Putman's therapist.  *Id. at 6, 17-20.*  Webber-Dereszynski's records suggested that Putman's mental disorders met the "paragraph C2" criteria in section 12.00 (Mental Disorders) of the Listing of Impairments and precluded him from full-time work.  *See Tr. 20, 444, 506.*  Putman argues the ALJ failed to provide specific, germane reasons to disregard this testimony.  *DKT 12 at 19.*

Third, Putman argues the ALJ improperly discredited his

testimony and ignored the consistent objective medical evidence. *Id. at 7, 20-21; Putman's Reply Br. (DKT 20) at 4, 10-13.*

Fourth, Putman argues the ALJ erred by failing to rely on the only hypothetical question posed to the vocational expert that included all of Putman's limitations. Putman argues that review of the vocational expert's testimony shows that "[t]he only hypothetical which incorporated all limitations... found these limitations would preclude full-time work." *DKT 12 at 21-22.*

In response, the Commissioner argues that the ALJ: (1) properly considered the evidence regarding Putman's back pain and based his decision on substantial evidence in the record, *Commissioner's Br. (DKT 18) at 7-10*; (2) reasonably discounted the statements of Webber-Dereszynski when considering Putman's mental impairments, *id. at 10-17*; (3) evaluated Putman's subjective complaints and reasonably found they were not credible, *id. at 17-24*; and (4) posed a hypothetical question to the Vocational Expert that captured all of Putman's functional limitations, *id. at 24.* Finally, the Commissioner argues that if the Court finds that the decision denying Putman's claims is not

supported by substantial evidence, the Court should remand for further administrative proceedings rather than reverse for an award of benefits. *Id. at 24-27.*

## VI. <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence. Considering Putman's allegations of error and applying controlling Ninth Circuit authority, the Court concludes, as discussed below, that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

### A. <u>ALJ's Consideration of the Evidence</u>

In evaluating Putman's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel.*

*Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *Tr. 14-21.* He set forth his rationale for both accepting and rejecting certain evidence in his assessment of Putman's medical records, credibility, and RFC. *Tr. 16-20.* In his decision, he also set forth the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to Putman's disability claims. *Id.* For these reasons, the Court finds unpersuasive Putman's argument that the ALJ's decision is not based on substantial evidence. The Court addresses Putman's specific allegations of error below.

### 1. Severity of Putman's Back Pain

The ALJ found that Putman has the following severe impairments: bipolar disorder, borderline personality disorder and obesity. The ALJ found that Putman's back pain, however, was not a severe impairment because it "did not significantly limit his ability to perform basic work activities." *Tr. at 16.* The ALJ noted in his decision that Putman alleged back pain, and that the medical evidence shows

"[e]vidence of early degenerative disc disease at the L2-L3 level." *Tr. 16* (citing *Tr. 470*). The ALJ relied on Putman's hearing testimony that he has never been placed on medication for back pain, nor been told by a physician that he has any limitations due to a back condition. *Id.* (*see also Tr. 76, 82*). *See Webb v. Barnhart*, 433 F.3d 683 (9th Cir. 2005) ( finding of severe impairment does require that the evidence establish at least a slight abnormality that has more than a minimal effect on an individual's ability to work).

The ALJ also cited: (1) an April 2010 X-ray showing no spinal abnormality and that the "spine is normally aligned"; (2) the fact that the only treatment physicians have recommended for Putman's back pain symptoms has been exercise and weight loss; (3) Dr. Richard Hurd's November 2009 examination finding that, except for morbid obesity, Putman "did not have any positive physical findings on his exam" and (4) Dr. Fernandez's physical residual function capacity assessment on November 13, 2009, which did not find a physical limitation due to Putman's back condition. *Tr. 18-19.* Based on this medical evidence, the ALJ concluded that Putman's physical

limitations were attributable to his obesity, rather than to a back impairment. *Tr. 19.* In light of the record as a whole, the Court concludes the ALJ's finding regarding Putman's back pain is supported by substantial evidence.

Even if the failure to find the back pain a severe impairment were error, the Court finds that the error is harmless because the ALJ did subsequently consider Putman's complaints of back pain in assessing his residual functional capacity. *Tr. at 18-19.*

## **2. Putman's Mental Disorders**

The ALJ did not err in finding that Putman's severe mental disorders did not meet or medically equal one of the impairments in the Listing of Impairments. *Tr. 17.* Section 12.00 in the Listing of Impairments pertains to mental disorders. 20 C.F.R. § 404 app. 1. The ALJ considered the criteria of listings 12.04, affective disorders, and 12.08, personality disorders. *Tr. 17.* To satisfy the "paragraph B" criteria for both 12.04 and 12.08, and thereby satisfy the listing, the mental impairments must result in at least two of the following:

1. Marked restriction of activities of daily living; or

2.      Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence, or pace; or

4.      Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. § 404, Subpt P, App. 1.  When addressing the 12.04 listing, if

the "paragraph B" criteria are not met, the ALJ can then consider the

additional functional limitations found in the "paragraph C" criteria.

*Id.*  For 12.04, the "paragraph C" criteria are as follows:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.      Repeated episodes of decompensation, each of extended duration; or

2.      A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.      Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

Respecting the "paragraph B" criteria, the ALJ found that Putman had "no more than mild restriction of his activities of daily living, marked difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." *Tr. 17.* Because Putman's mental impairments did not cause at least two "marked" limitations, or one "marked" limitation and repeated episodes of decompensation, the ALJ concluded that the "paragraph B" criteria were not satisfied. *Id.* The ALJ also considered the "paragraph C" criteria, applicable to the 12.04 listing, and concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.*

The Court finds here that the following substantial evidence supports the ALJ's conclusions. Psychologist Marian F. Martin, Ph.D., testified at the ALJ hearing that Putman's restriction on activities of daily living was "mild," restriction of social functioning was "moderate to marked," restriction on concentration, persistence and pace was "moderate," and Putman had no episodes of decompensation. *Tr. 105-06.* Dr. Martin also testified that "most of the records" did not establish

the presence of "paragraph C" criteria.  *Tr. 17, 106, 109.*  The records of

Psychologist Marsha McFarland, Ph.D., indicate the presence of no

more than moderate limitations under the "paragraph B" criteria, and

no evidence of "paragraph C" criteria.  *Tr. 20, 459-460.*  Psychologist

Robert Bateen, Ph.D., reviewed Dr. McFarland's Mental RFC and

affirmed it as written.  *Tr. 20, 508.*

The ALJ also considered the records and opinions of Webber-

Dereszynski, which suggested the existence of "paragraph C2" criteria

with respect to the 12.04 listing.  *Tr. 17, 20, 444, 506.*  The ALJ granted

little weight to these opinions and, as discussed below, did not err in

doing so.  Dr. Martin testified that, with the exception of Webber-

Dereszynski's opinions, "most of the records" did not establish

"paragraph C" criteria.  *Tr. 17, 20, 106, 109.*  Therefore, reviewing the

record as a whole, the Court concludes the ALJ's determination

regarding Putman's mental disorders is supported by substantial

evidence and is free of legal error.

### B.  <u>Weight ALJ Afforded Webber-Dereszynski's Opinions</u>

The ALJ did not fail to properly consider the opinion of licensed

counselor Webber-Dereszynski. As noted above, Webber-Dereszynski's records suggested that Putman's mental disorders met the "paragraph C2" criteria for the section 12.04 listing, and precluded him from full-time work. *See Tr. 17, 20, 444, 506.*

"[T]o reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Only those qualified specialists listed in 20 C.F.R. § 404.1513(a) are considered "acceptable medical sources," including licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. Those individuals designated as "other sources" under 20 C.F.R. § 202.1513(d) include nurse practitioners, physicians' assistants, therapists, counselors, and clergy. The opinions of such "other sources" are not entitled to the same deference afforded "acceptable medical sources" and an "ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3 at 1111 (citations omitted).

The Social Security regulations do not recognize a mental health counselor such as Webber-Dereszynski as an acceptable medical source. Putman does not dispute this conclusion. *See DKT 12 at 17; DKT 20 at 4.* Nor does he argue that she was working under a physician's close supervision as part of an interdisciplinary team. *Compare Gomez a. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Thus, the ALJ could discount her opinions if he gave specific, germane reasons for doing so. The Court concludes that he did.

The ALJ granted little weight to Webber-Dereszynski's opinions for two reasons. First, the ALJ found Webber-Dereszynski's opinions were "conclusory statements regarding [Putman's] ability to work, rather than evaluations of [his] functional capacity based on his mental impairments." *Tr. 20.* This was a proper basis to discount Webber-Dereszynski's opinions. *See* 20 C.F.R. § 404.1527(d); *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) (even a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability").

Second, in light of Dr. Martin's testimony and Dr. McFarland's

Mental RFC assessment, the ALJ found that "Webber-Dereszynski's opinion is without substantial support from the other evidence of record." *Tr. 20.* This, too, was a proper basis to discount Webber-Dereszynski's opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole").

In light of the evidence in the record as a whole, the Court concludes that these reasons for discounting Webber-Dereszynski's opinions are germane, and thus the ALJ did not err.

## C.  ALJ's Assessment of Putman's Credibility

Putman argues the ALJ improperly discredited his testimony. *DKT 12 at 7.* In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Ninth Circuit restated the long-standing standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis.  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  If the

claimant has presented such evidence, and there is no
evidence of malingering, then the ALJ must give specific,
clear and convincing reasons in order to reject the claimant's
testimony about the severity of the symptoms. At the same
time, the ALJ is not required to believe every allegation of
disabling pain, or else disability benefits would be available
for the asking, a result plainly contrary to 42 U.S.C. §
423(d)(5)(A). In evaluating the claimant's testimony, the
ALJ may use ordinary techniques of credibility evaluation.
For instance, the ALJ may consider inconsistencies either in
the claimant's testimony or between the testimony and the
claimant's conduct, unexplained or inadequately explained
failure to seek treatment or to follow a prescribed course of
treatment, and whether the claimant engages in daily
activities inconsistent with the alleged symptoms. While a
claimant need not vegetate in a dark room in order to be
eligible for benefits, the ALJ may discredit a claimant's
testimony when the claimant reports participation in
everyday activities indicating capacities that are
transferable to a work setting. Even where those activities
suggest some difficulty functioning, they may be grounds for
discrediting the claimant's testimony to the extent that they
contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotations

omitted).

Putman's subjective complaints regarding physical limitations

focused primarily on back pain. The ALJ found Putman's back pain to

be non-disabling, based on: (1) the April 2010 X-ray showing normal

spinal alignment and no spinal abnormality; (2) the fact that the only

treatment physicians have recommended for the back pain symptoms has been exercise and weight loss; and (3) Dr. Hurd's November 2009 examination finding that, except for morbid obesity, Putman "did not have any positive physical findings on his exam." *Tr. 18-19.* To the extent the ALJ discredited Putman's testimony regarding Putman's back pain, he gave clear and convincing reasons, based on the objective medical evidence, for doing so.

As to Putman's testimony regarding his mental impairments, he suggests that the ALJ failed to note Putman's testimony that he is unable to leave his shed one day per week and that the ALJ failed to resolve this inconsistency. *DKT 12 at 21; DKT 20 at 10.* This refers to Putman's testimony at the hearing that he isolates himself because of depression or anger. *Tr. 65-66.* But the ALJ did indeed note Putman's testimony that he "isolates himself completely (not seeing any other person) at least once per week." *Tr. 19.* The ALJ included in the RFC specific limitations respecting Putman's mental impairments, such as "brief, superficial contact with the public[,]" "little interaction with coworkers[,]" and "minimal supervision and interaction with

supervisors[.]" *Tr. 18.*

The ALJ thoroughly discussed the extensive evidence regarding Putman's mental health issues. *Tr. 19-21.* The ALJ specifically noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are consistent with the above residual functional capacity assessment." *Tr. 19.* The ALJ cited to the records of Dr. Mark Nicholson, M.D., which show that Putman maintained a "euthymic" diagnosis for several months after his alleged disability onset date. *Tr. 20, 345.* The ALJ also relied on Dr. Martin, the medical expert, who testified that, "even after taking the claimant's testimony at hearing into consideration" her evaluation of the "B" criteria and the "C" criteria would remain unchanged. *Tr. 20.* Furthermore, any error in failing to discuss the significance of each item of Putman's testimony was harmless, where the ALJ's summary of Putman's medical record reflected that he was aware of and thoroughly considered Putman's mental health issues, particularly where the accepted medical sources did not support such limitations. *See Garza v. Astrue*, 380 Fed.Appx. 672 (9th Cir. 2010) (finding harmless ALJ's

-22-

failure to provide clear and convincing reasons for rejecting claimant's testimony where ALJ implicitly found that claimant's testimony conflicted with the medical record and where there was a lack of objective medical evidence to support the claimant's testimony).

As noted, the Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted).

### D. ALJ's Hypothetical Question to Vocational Expert

Putman argues that the ALJ erred in failing to adopt the vocational expert's answer to a hypothetical question that incorporated all of his limitations – an answer that stated Putman would be precluded from performing full-time work. *DKT 12 at 21-22 (*citing *Tr. 119-120).* Instead, the ALJ relied on the vocational expert's answer to the hypothetical that contained the limitations set forth in Putman's RFC assessment. *Tr. 21*.

As discussed in detail *supra*, the Court already has determined

that the ALJ did not err in: (1) discrediting Webber-Dereszynski's testimony regarding whether Putman's mental disorders met the criteria in the Listing of Impairments; and (2) discrediting, where appropriate, Putman's testimony with respect to his symptoms and limitations. The ALJ was not required to incorporate the additional limitations supported only by the testimony of Webber-Dereszynski and Putman. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence"). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Putman's limitations. The Court concludes that he did so, and thus he did not err.

## VII. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS ORDERED** that Putman's summary judgment motion (*DKT 11*) is DENIED, the Commissioner's summary judgment motion (*DKT 17*) is GRANTED, and the Commissioner's decision denying DIB is affirmed.

The Clerk of Court shall enter Judgment accordingly.

DATED this 11th day of December, 2012.

/s/ Carolyn S. Ostby
United States Magistrate Judge